United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YER M.,
Plaintiff,
v.
SSA COMMISSIONER, et al.,
Defendants.

Case No. 4:25-cv-05209-KAW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 16, 18

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for further proceedings, including a new hearing and new decision. Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's cross-motion for summary judgment.

## I. BACKGROUND

Plaintiff filed an application for Title II benefits on April 7, 2022, and a separate Title XVI application for supplemental security income on April 7, 2022. (Administrative Record ("AR") 17.) Both applications alleged disability beginning August 2, 2021. *Id.* The Social Security Administration ("SSA") denied Plaintiff's applications initially and on reconsideration. *Id.* Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the hearing was held on May 28, 2024, at which Plaintiff and a vocational expert ("VE") testified. (AR 17, 39.)

Following the hearing, the ALJ denied Plaintiff's applications on June 7, 2024. (AR 17-32.) A request for review of the ALJ's decision was filed on August 2, 2024. (AR 300-302.) The

United States District Court
Northern District of California

Appeals Council denied Plaintiff's request for review on May 12, 2025. (AR 1.)

On, June 20, 2025, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) On October 15, 2025, Plaintiff filed the motion for summary judgment. (Pl.'s Mot., Dkt. No. 16.) On November 5, 2025, Defendant filed an opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 18.) No reply brief was filed, so the cross-motions are fully briefed.

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under SSA regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

United States District Court
Northern District of California

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner at step five. *Id.* at 954.

## III. DISCUSSION

Plaintiff challenges the ALJ's decision on four grounds: (1) the ALJ erred by failing to find any mental conditions severe at step 2; (2) the ALJ's erred in weighing the medical opinion of Dr. Nevin; (3) the ALJ erred in failing to credit Plaintiff's subjective symptom testimony; and (4) the ALJ's findings at step 5 are not supported by substantial evidence.

### A. Step Two Severe Impairments

First, Plaintiff contends that the ALJ erred by failing to find that her well-documented mental health conditions constitute a severe impairment. (Pl.'s Mot. at 2.)

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). As a result, "[a]n impairment or combination of impairments may be found 'not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290).

When determining whether a mental impairment constitutes a severe impairment, an ALJ is required to follow 20 C.F.R. § 404.1520a. *Keyser v. Comm'r SSA*, 648 F.3d 721, 725 (9th Cir. 2011). This regulation requires that "the reviewer must determine whether an applicant has a

medically determinable mental impairment, rate the degree of functional limitation for four functional areas, determine the severity of the mental impairment (in part based on the degree of functional limitation), and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder." *Id.* (internal citations omitted).

Here, the ALJ found that Plaintiff's medically determinable impairments included unspecified depressive disorder, major depressive disorder, single episode, unspecified, depressive disorder due to another medical condition, and/or mood disorder, resolved. (AR 20.) Notwithstanding, the ALJ found that Plaintiff experienced no more than mild limitations in the four functional areas of mental functioning. (AR 20-22.) The four broad functional areas are known as the "paragraph B" criteria, and are: 1) understanding, remembering or applying information; 2) interacting with others; 3) concentrating, persisting or maintaining pace; and 4) adapting or managing oneself. (AR 20-21 (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1).)

In explaining his evaluation, the ALJ acknowledged that, on reconsideration, Dr. Robert McGuffin found Plaintiff's depression constituted a severe impairment, but the ALJ discounted that finding because there was no "B" criteria evaluation performed. (AR 21.) To the contrary, Dr. McGuffin's reconsideration evaluation did address the "paragraph B" criteria. In fact, Plaintiff was found to be "moderately limited" in almost every criterion, including understanding and remembering detailed instructions, maintaining attention and concentration for extended periods, sustaining an ordinary routine without special supervision, and working in coordination with or in proximity to others without being distracted. (*See, e.g.,* AR 135, 140-43.) Plaintiff was also found to be moderately limited in her ability to interact with others, including the general public, coworkers/peers, and accepting instructions and criticism from supervisors. (AR 142-43.) Plaintiff was further found to be moderately limited in her ability to respond appropriately to changes in the work setting. (AR 143.) The Court notes that the ALJ found Dr. McGuffin's opinion persuasive as to the physical limitations noted, but not as to Plaintiff's mental limitations. (*See* AR 28.)

Moreover, the ALJ attempts to characterize the medical evidence as unsupported because

Plaintiff sometimes presents with a normal affect, "she was no longer crying everyday," she had more normal mental status evaluations than not, and she was only taking a small dose of Lexapro, does not mean that depression did not constitute a severe impairment at step two. (*See* AR 21-22.) Plaintiff contends that the medical record overwhelmingly documents her significant mental health impairments, including impaired cognition and depressive symptoms. (Pl.'s Mot. at 3.) Specifically, Plaintiff cites to standardized testing on multiple occasions that revealed PHQ-9 and GAD-7 scores ranging from moderate to severe. *Id.* (citing AR 761, 780-81, 1384-87, 1668.)

At step two, the finding that an impairment is severe is the default, and here, the weight of the evidence indicates that Plaintiff's depression is severe at step two. First, the ALJ mischaracterized the medical evaluation in connection with Plaintiff's request for reconsideration, which clearly addresses the "paragraph B" criteria in detail. (*See* AR 20-22.) Second, treatment by a psychiatrist and antipsychotic medication is hardly "conservative treatment." *See, e.g., E. v. Dudek*, No. 25-CV-02891-KAW, 2026 WL 809912, at *5 (N.D. Cal. Mar. 24, 2026) (citing *Michael W. v. Bisignano*, No. 2:25-cv-00635-BFM, 2026 WL 166564 at *4, 2026 U.S. Dist. LEXIS 9511 at *9 (C.D. Cal. Jan. 16, 2026) (finding that prescriptions of antipsychotic medication "is not considered conservative")).

The ALJ's error at step two is not harmless, because Plaintiff "has demonstrated a colorable claim of mental impairment." *See Keyser*, 648 F.3d at 727. Furthermore, the error at step two means that the ALJ erred at step three, because he failed to consider whether Plaintiff's mental impairment met or equaled a listed impairment, and that error was committed in formulating the RFC. *Id.* Accordingly, the case is subject to remand at step two. *Id.*

**B. Medical Opinion**

Next, Plaintiff argues that the ALJ erred in evaluating the opinion of treating physician Dr. Cameron Niven. (Pl.'s Mot. at 7-9.)

Under the updated regulations, the SSA "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." 20 C.F.R. § 416.920c(a). Instead, each medical opinion's persuasiveness is evaluated based on various factors, the most important of which are "supportability" (the extent to which the medical

opinion is supported by relevant and objective medical evidence) and "consistency" (the extent to which a medical opinion is consistent with evidence from other medical and nonmedical sources). *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022). Neither supportability nor consistency is controlling; they are considered in relation to each other and to any other factors an ALJ finds relevant. 20 C.F.R. § 404.1520c(b)(2).

While a medical source's relationship with the claimant is to be considered, "the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods,* 32 F.4th at 791. An ALJ, however,

> cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.

*Id.* at 792 (internal quotation omitted).

On October 3, 2023, Dr. Niven furnished a diabetes mellitus medical opinion. (AR 1563-67.) Therein, Dr. Niven opined that Plaintiff had less than sedentary RFC. (AR 1563-1567.) Plaintiff contends that the ALJ improperly rejected this treating physician opinion because it was in the form of a "check-box medical source statement." (AR 29.) A medical opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire. *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). An ALJ may, however, reject such reports only where they do not contain any explanation of the bases of their conclusions or where contradicted by the medical record. *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). As Plaintiff points out, Dr. Niven's medical source statement explains the limitations. (Pl.'s Mot. at 8.) For example, Dr. Nevin cites clinical findings such as "bilateral lower extremity edema and neuropathy leading to gait abnormalities and weakness," supporting the walking and standing limitations (AR 1563.) She describes side effects of medication such as dizziness and states the diabetes medications can cause her patient to experience hypoglycemia and indicates that her patient experiences symptoms such as pain, fatigue, weakness and episodic vision blurriness. *Id.*

Here, Plaintiff argues that the ALJ erred in discounting Dr. Nevin's opinion because the ALJ's supportability and consistency analyses were not supported by substantial evidence. (Pl.'s

United States District Court
Northern District of California

Mot. at 8-9.)

**i. Supportability**

An ALJ's supportability analysis cannot consist of a mere summary of conditions. Rather, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025) (quoting *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000)). Multiple courts in this circuit, including some in this district, have required that the ALJ draw a logical bridge to enable the reviewing court to meaningfully review the ALJ's findings. *See, e.g., Perry v. Berryhill*, No. 15-CV-04566-DMR, 2017 WL 840382, at *6 (N.D. Cal. Mar. 3, 2017) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)); *Lizer v. Berryhill*, 363 F. Supp. 3d 1097, 1102 (N.D. Cal. 2019) (quoting *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (logical bridge required to afford meaningful review of ALJ's decision); *Teresa P. v. Comm'r of Soc. Sec.*, No. 24-CV-100-AJB-DDL, 2025 WL 326160, at *4 (S.D. Cal. Jan. 29, 2025), *report and recommendation adopted,* No. 24-CV-00100-AJB-DDL, 2025 WL 590373 (S.D. Cal. Feb. 24, 2025) (quoting *Perry,* 2017 WL 840382, at *6); *Gomez v. Bisignano,* No. 1:25-CV-00966-EGC, 2026 WL 2532004, at *6 (E.D. Cal. Aug. 27, 2026) (failure to draw logical bridge rendered decision not supported by substantial evidence).

Courts must "review [an] ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999)). Thus, the Court cannot consider any discussion in the decision that the ALJ did not clearly tie to his supportability analysis.

Here, the ALJ concludes that Dr. Nevin's RFC finding "extreme, below-sedentary opinion is not well-supported but contradicted by the only minor physical examination and radiograph findings, conservative treatment with generally once-monthly appointments, and grossly full range of activities of daily living." (AR 30.)

In opposition, Defendant argues that Dr. Nevin's opinion was properly discounted for having checkboxes, and that the ALJ properly rejected it because of Plaintiff's conservative

United States District Court
Northern District of California

treatment, including the fact that she declined trigger point injections. (Def.'s Opp'n at 5-6 (citing AR 30).) The ALJ, however, merely mentioned once-monthly appointments, presumably with Dr. Nevin, not that Plaintiff declined shots in her shoulder. *See ids.* Defendant, however, is conflating supportability with consistency, because supportability only asks whether the results of Dr. Nevin's examination support Dr. Nevin's opinion. Thus, the ALJ's supportability analysis is virtually nonexistent. By declining to comment on the implications of the evidence presented, the ALJ failed to establish a logical bridge between Dr. Nevin's examination and the ALJ's finding that the RFC was unsupported.

Accordingly, the ALJ's finding of unsupportability is not supported by substantial evidence.

**ii. Consistency**

Generally, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). While the ALJ need not analyze the entire medical record, the points of reference must be sufficiently many to adequately characterize the record as a whole. *See Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) ("a court must consider the record *as a whole*, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion.") (quoting *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir.1993)) (emphasis added). The use of the plural in referring to "other medical sources and nonmedical sources" suggests that the points of comparison must, at minimum, be multiple. *See* 20 C.F.R. § 404.1520c(c)(2).

Plaintiff contends that Dr. Niven's opinion is consistent with findings from multiple other physicians. (Pl.'s Mot. at 9.)

In opposition, Defendant argues that Plaintiff declining trigger point injections and sticking with conservative treatments shows that Dr. Niven's opinion of debilitating physical symptoms was inconsistent with the record. (Def.'s Opp'n at 5-6.) The ALJ, however, merely referenced evidence in passing without explaining how it was weighed against Dr. Niven's opinion. Since the ALJ failed to clearly cite to this evidence in his consistency analysis, the Court cannot properly

consider that argument. *See Brown-Hunter v. Colvin,* 806 F.3d 487, 494 (9th Cir. 2015) (The court can only consider the reasons asserted by the ALJ.).

Additionally, as discussed below, *infra* Part III.C, the ALJ's discounting Dr. Niven's medical opinion because Plaintiff opted for conservative treatment does not allow for meaningful review by the Court. *See Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1103 (9th Cir. 2014). The fact that Plaintiff has the burden of proof in steps one through four of the sequential analysis does not obviate the ALJ's responsibility to conduct a thorough consistency analysis. Thus, the ALJ's consistency analysis was insufficient.

Accordingly, the ALJ erred in finding Dr. Niven's opinion unpersuasive, because that finding was not supported by substantial evidence.

**C. Plaintiff's Credibility**

Third, Plaintiff alleges that the ALJ erred in failing to credit her subjective symptom testimony. (Pl.'s Mot. at 10.) In the absence of affirmative evidence of malingering, the ALJ may reject a claimant's testimony by offering clear and convincing reasons for doing so. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

"A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (internal quotation omitted). Thus, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotations omitted).

Here, Plaintiff contends that the ALJ improperly discounted the severity of her symptoms, because the medical treatment was conservative. (Pl.'s Mot. at 11.) Plaintiff contends that the only treatment for Plaintiff's gastrointestinal symptoms of diabetic autonomic neuropathy is diet and medication, such that the lack of more aggressive treatment is not a valid reason to discount her symptoms. *Id.* As for the adhesive capsulitis in her shoulders, Plaintiff's doctors recommended injections, but she did not want injections near the neck for fear "they pinpoint it wrong and I'm going to be more crippled. So I'm scared I didn't want to do that." *Id.* (citing AR 600.) Plaintiff

argues that "[h]er failure to avail herself of this treatment for her shoulders is a reflection of her anxiety disorder rather than an indication of the degree of pain she experiences." (Pl.'s Mot at 11.)

In opposition, Defendant argues that the ALJ reasonably discounted Plaintiff's self-reports because they conflicted with the medical record. (Def.'s Opp'n at 6.) First, Defendant states that "[t]he ALJ found that Plaintiff stopped working for reasons unrelated to her impairments." *Id.* To the contrary, the ALJ merely stated that Plaintiff was not fired, but that she quit her job in the Midwest after flying from Wisconsin to visit her daughter in California. (AR 27.) Defendant then states that Plaintiff testified that she quit to go on vacation in 2021 and not because her impairments stopped her from working, but that is also inaccurate. (*See* Def.'s Opp'n at 6.) At the hearing, Plaintiff testified that she visited her daughter in California during COVID, and, after explaining the toll her warehouse work was taking on her body and the related health complications she was experiencing from being on her feet all day, her daughter told her that she needed to take time off for her health. (*See* AR 60-62.) Plaintiff testified that, at work, she experienced swelling in her legs and calves, urinary incontinence, diarrhea, blurry vision, and neuropathy, and her employer's response was to take some medicine and get back to work. *Ids.*

Second, to the extent that the ALJ discounted Plaintiff's testimony because she said that she was unable to drive, that was in error. (*See* AR 27.) Plaintiff testified that she had a Wisconsin driver's license, but that she could not pass the California driving test, so she was unable to become licensed in California. (AR 53-55.) When pressed on how long she continued to drive on her Wisconsin license, she said, "I don't remember," and, later, "I don't know. I didn't drive, so then I don't remember." AR 55-56. The ALJ assumes that her reporting to Dr. McMillan in August 2022 that she drives her child to school, drives short distances to stores, and that the "DMV does require her to wear glasses while driving" is inconsistent with her testimony that she ceased driving. (*See* AR 27.) Plaintiff, however, clearly testified that she no longer drives and could not remember exactly when she had stopped, so this statement in the record is not sufficient to discredit her testimony regarding her symptoms. Furthermore, the fact that Plaintiff could physically drive, but not legally drive in California, would explain why, in her function report she "first checked off that she could drive a car, but then struck through her checkmark." (*See* AR 27

(citing AR 430[1].)

Third, the ALJ erred in discounting Plaintiff's memory loss. (*See* AR 27.) One need only review the transcript to see that Plaintiff has difficulty remembering when things happened, as was the case with the timing of when she stopped driving. (*See* AR 53-56.) Here, the ALJ found that Plaintiff's claimed memory loss was not credible based on the fact that she remembered that she had gone to two consultative examinations by the SSA: one with a man and the other with a woman. (AR 27.) While Plaintiff testified that she saw one male doctor and one female doctor, she was not sure who Dr. McMillan was when asked by the ALJ and even said that she thought the doctor she talked to about driving was a woman. (*See* AR 58.) Based on name alone, Dr. Eugene McMillan is presumably not a woman. (*See* AR 533-37.)

Based on the foregoing, the Court finds that the ALJ erred in discounting Plaintiff's credibility, because he failed to articulate clear and convincing reasons for doing so.

Accordingly, the Court finds that the ALJ erred in discounting Plaintiff's testimony.

### D. The ALJ's Step 5 Determination

Finally, Plaintiff contends that the ALJ's findings at step 5 are not supported by substantial evidence, because the number of jobs relied upon in this case is not significant. (Pl.'s Mot. at 11.) Based on the errors committed at the prior steps in the sequential process, the Court is unable to determine whether the ALJ erred at step 5. Given the error at step two, the Court orders that the Commissioner hold another hearing to sufficiently develop the sequential record, including new vocational expert testimony should the Commissioner proceed to step five.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment. Since it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence was properly evaluated, remand is appropriate.

---

[1] The Court notes that Plaintiff could have also plausibly checked the wrong "car" box, because she ultimately selected "ride in a car" as the answer to the question "When going out, how do you travel?" (AR 430.) She did not select any other options, which were "walk," "ride a bicycle," "use public transportation," or "other." *See id.*

United States District Court
Northern District of California

On remand, the ALJ must properly develop the record, hold a new hearing, and evaluate the evidence based on applicable law consistent with this order.

IT IS SO ORDERED.

Dated: September 30, 2026

KANDIS A. WESTMORE
United States Magistrate Judge